**The document below is hereby signed.**

**Dated: July 8, 2011.**



**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LEONARD ALFRED CARPENTER, | ) | Case No. 10-00572 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| THOMAS COFFIN WILLCOX, *et al.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 10-10048 |
| | ) | |
| LEONARD A. CARPENTER, | ) | **For Publication in West's** |
| | ) | **Bankruptcy Reporter** |
| Defendant. | ) | |

MEMORANDUM DECISION AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

The plaintiff, Wyatt, alleges that the defendant, Carpenter,
induced her to enter into a contract for him to perform work on
her home in the District of Columbia by fraudulently representing
that he held a license to perform home improvement work in the
District of Columbia.  She obtained a $55,540 judgment against
Carpenter in the Superior Court for the District of Columbia, and

now seeks a determination that the judgment is nondischargeable

pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt for property

obtained by fraud.  (Her attorney, Willcox, who joined as a

plaintiff, no longer presses his claims in this proceeding.)

Carpenter has moved to dismiss.  For purposes of the motion, I

assume that the allegations of the second amended complaint are

accurate.  Although I agree with Carpenter on his principal

contention, and can grant partial dismissal in that regard, I

will not grant dismissal as to all issues.

I

Wyatt's judgment was, first, an award to her of all

compensation Carpenter had received in the amount of $10,671.

That disgorgement of compensation was premised on a District of

Columbia rule of law that requires an unlicensed contractor to

disgorge any compensation received if the contractor accepted

compensation prior to completing a job:

> No person shall require or accept any payment for a home
> improvement contract to be undertaken in the District in
> advance of the full completion of all work required to be
> performed under the contract, unless that person is
> licensed as a home improvement contractor or as a
> licensed salesperson employed by a licensed contractor in
> accordance with the provisions of this chapter.

16 D.C. Mun. Reg. § 800.1.  When an unlicensed home improvement

contractor takes a payment for work on a home in the District of

Columbia before completing all of the work, that voids the

contract and entitles the homeowner to a return of all moneys

2

paid to the contractor, regardless of whether the homeowner knew
the contractor was unlicensed, regardless of whether the
contractor misled her regarding whether he was licensed, and
regardless of whether the contractor performed the work in a
competent fashion. *Nixon v. Hansford*, 584 A.2d 597 (D.C. 1991);
*Billes v. Bailey*, 555 A.2d 460, 462 (D.C. 1989).

The Superior Court found that Carpenter had performed his
work in a shoddy fashion, and that a $1,944 insurance payment
that Wyatt had received from her home insurance carrier for water
damage "was significantly insufficient to pay for all the damage
that had been done by defendant." Nevertheless, the judgment did
not include an award for the damages caused by Carpenter's shoddy
work.

Instead, in addition to awarding disgorgement of the
$10,615, the court found the violation of DCMR § 800.1 to be an
unlawful trade practice under D.C. Code § 28-3904(dd), and
pursuant to D.C. Code § 28-3905(k)(1), the Superior Court trebled
$8,671 of the $10,615 disgorgement award. The Superior Court
explained that it limited the trebling of damages to only $8,671
of the disgorgement award "because plaintiff did receive payment
of $1944 from her home insurance company for some of the water
damage caused by defendant's shoddy work." The total
disgorgement award, after taking into account the partial
trebling of damages, came to $27,957 (the sum of $10,615 + $8,671

3

+ $8,671).

Finally, the Superior Court granted Wyatt her attorney's
fees and costs of $27,583.  That brought the total judgment to
$55,540.

II

Carpenter has sought dismissal, contending that a
construction contractor's license in the District of Columbia
does not depend on the contractor's level of skill, and thus that
any damage Wyatt suffered from shoddy work by Carpenter was not
proximately caused by Wyatt's alleged reliance on Carpenter's
stating that he was licensed.  The judgment was not an award for
damages caused by shoddy work.  Instead, the judgment was
premised on the violation of a regulation that forbade
Carpenter's accepting payment before completion of his work, and
the District of Columbia rule of law requiring disgorgement of
compensation when that regulation is violated.  The real issue is
whether such an award necessarily is not a debt for property
obtained by fraud.

III

Under 11 U.S.C. § 523(a)(2)(A), a chapter 7 discharge:

> (a) ... does not discharge an individual debtor from
> any debt--
>
> ...
>
> (2) for money, property, services, or an
> extension, renewal, or refinancing of credit, to
> the extent obtained by--

4

> > (A) false pretenses, a false representation,
> > or actual fraud, other than a statement respecting
> > the debtor's or an insider's financial
> > condition....

11 U.S.C. § 523(a)(2)(A) (2006).

> As held in *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998):

> The most straightforward reading of § 523(a)(2)(A) is
> that it prevents discharge of "any debt" respecting
> "money, property, services, or credit" that the debtor
> has fraudulently obtained, including treble damages
> assessed on account of the fraud. *See Field v. Mans*, 516
> U.S. 59, 61, 64, 116 S.Ct. 437, 439, 441, 133 L.Ed.2d 351
> (1995) (describing § 523(a)(2)(A) as barring discharge of
> debts "resulting from" or "traceable to" fraud). . . .
> [T]he phrase "to the extent obtained by" in
> § 523(a)(2)(A) . . . makes clear that the share of money,
> property, etc., that is obtained by fraud gives rise to
> a nondischargeable debt.  Once it is established that
> specific money or property has been obtained by fraud,
> however, "any debt" arising therefrom is excepted from
> discharge.

Accordingly, if Carpenter's receipt of payments gave rise to a

debt for such payments as being obtained by fraud, the judgment,

including the trebled damages and attorney's fees, is

nondischargeable.

IV

An obligation to disgorge all compensation received by an

unlicensed contractor, premised solely on a rule of law, like the

District of Columbia's, that requires no showing of a knowing

misrepresentation or actual damages, does not give rise to a

nondischargeable claim for property obtained by fraud.  *Ghomeshi*

*v. Sabban (In re Sabban)*, 600 F.3d 1219 (9th Cir. 2010).

5

In *In re Sabban*, California Business & Professions Code
§ 7031(b) provided that a party who has utilized the services of
an unlicensed contractor may recover all compensation paid to
that contractor for performance of a contract, with fraud or
actual harm being irrelevant.  A separate statute, California
Business & Professions Code § 7160, provided a cause of action to
individuals induced to contract for home improvements in reliance
on fraudulent statements by a contractor or its solicitor,
authorizing such an individual to recover a penalty of $500 and
damages sustained by reason of such statements.

The debtor, Sabban, had induced the plaintiff, Ghomeshi, to
contract for home remodeling by his company, Pacific, in reliance
on Sabban's misrepresentation that Pacific was licensed.
Ghomeshi sued Sabban in state court to recover $123,000 in
compensation paid and to recover a $500 penalty and actual
damages.  The state court awarded $123,000 Ghomeshi pursuant to §
7031(b), and concluded that Sabban had engaged in a fraudulent
representation that his company was licensed but held that Sabban
and Pacific had caused no losses to Ghomeshi, and thus awarded
pursuant to § 7160 (the statutory cause of action for fraud) only
the $500 penalty and attorney's fees authorized by that statute.

Ghomeshi sought a determination of nondischargeability of
its claim in the bankruptcy court.  The bankruptcy court held
that the disgorgement award of $123,000 was dischargeable,

6

reasoning that the $123,000 awarded did not constitute a loss and damage sustained by Ghomeshi as the proximate result of Sabban's false representation that Pacific was a licensed contractor.  By the time the case reached the court of appeals, both the $500 and the attorney's fees awarded under § 7160 (the statutory cause of action for fraud) had been held nondischargeable, and Sabban did not challenge the correctness of that ruling.

In the court of appeals, Ghomeshi argued that the $123,000 disgorgement award was nondischargeable.  Ghomeshi argued that under *Cohen v. de la Cruz*, it made no difference that a debtor's proven fraud exposes him to further liability for violation of laws that do not mention fraud.  The court of appeals disagreed, and distinguished *Cohen v. de la Cruz*, in part, on the basis that Sabban had caused no actual harm.  Critically, however, the court of appeals in *In re Sabban* distinguished *Cohen v. de la Cruz* on the additional basis that unlike the statute at issue in *Cohen*, § 7031(b) (the analog of the District of Columbia rule of law at issue here) was not premised on there being actual damage or a knowing misrepresentation.

V

This case is slightly different because Carpenter allegedly performed the work in a shoddy fashion.  The debtor in *In re Sabban*, in contrast, had caused no losses and his fraudulent

7

representation only subjected him to the $500 penalty and
attorney's fees.

As in *In re Sabban*, Carpenter's obligation to disgorge
compensation received was pursuant to a rule of law (D.C.M.R.
§ 800.1 and the decisions adopting a disgorgement remedy for
violation of that regulation) that required no showing of harm
proximately caused by a knowing misrepresentation.  Accordingly,
the obligation under that District of Columbia rule of law to
disgorge compensation received is dischargeable even if
Carpenter, in addition, caused actual harm and misrepresented
that he was licensed.  The trebling of damages, similarly, was
premised on the violation of D.C.M.R. § 800.1, and did not depend
on a misrepresentation or actual harm (although the Superior
Court took into account the extent to which actual damages had
been suffered in deciding upon the extent to which it would
treble damages).

VI

The issue boils down to one of the elements necessary to
prove that a debt is for property obtained by fraud, namely, the
requirement that the creditor show that the misrepresentation was
the proximate cause of the creditor's losses.

A

Numerous decisions have addressed § 523(a)(2)(A) in
instances in which the debtor falsely represented that he had a

8

professional license, and have looked to whether the license

would have required a level of skill and knowledge in the

professional field.  In *Gem Ravioli, Inc. v. Creta (In re Creta)*,

271 B.R. 214 (B.A.P. 1st Cir. 2002), the debtor falsely

represented that he had a license to engage in refrigeration

work.  The court observed:

> [W]hen an individual asserts that he possesses a
> refrigeration license, whether it be an apprentice's
> license, a journeyperson's license, or a master's
> license, **he is making a representation that he possesses**
> **the necessary level of skill and knowledge to perform**
> **refrigeration and air conditioning work.**  A
> misrepresentation as to whether a debtor has such a
> license goes to the very essence of the agreement, *i.e.*,
> the reliance by the contracting party that the debtor has
> the requisite knowledge, experience, and training to
> properly complete the work.  *Parker v. Grant (In re*
> *Grant)*, 237 B.R. 97, 119 (Bankr. E.D. Va. 1999).  *See*
> *also Kendrick v. Pleasants (In re Pleasants)*, 231 B.R.
> 893, 898 (Bankr. E.D. Va. 1999) ("Professional licenses
> carry with them a degree of presumed competence ...");
> *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813, 820
> (Bankr. E.D.N.Y. 1981) ("The incidence of license conveys
> to lay persons a concept of authority and standards of
> workmanship impacting on reliance.").
>
> **When a creditor establishes that a debtor**
> **fraudulently induced the creditor to enter into a**
> **transaction by a misrepresentation that goes to the**
> **essence of the transaction, *i.e.*, a debtor's training,**
> **competency or experience to complete the work**
> **contemplated by the transaction, the misrepresentation**
> **was a substantial factor in entering into the**
> **transaction, the debtor's work later appears defective,**
> **and the creditor suffers a loss, the creditor has**
> **established a prima facie case that the defects derive**
> **directly from the lack of professional qualifications of**
> **the debtor.**  *Grant*, 237 B.R. at 119.  *See also Pleasants*,
> 231 B.R. 893 (finding a debt nondischargeable where the
> debtor knowingly misrepresented himself as an architect
> with the intent for the creditors to rely on his
> representations and the creditors relied on his

representations to their detriment); *McCain v. Fuselier
(In re Fuselier)*, 211 B.R. 540 (Bankr. W.D. La. 1997)
(finding the homeowner's judgment against the debtor
non-dischargeable where the debtor misrepresented that he
held a contractor's license and without authority placed
a different contractor's license number on the proposed
construction contract); *McDaniel v. Border (In re
McDaniel)*, 181 B.R. 883 (Bankr. S.D. Tex. 1994) (finding
the debtor's obligation to a homeowner nondischargeable
where the homeowner established that the debtor made a
false representation that he was an architect, with the
intent of deceiving her, she relied to her detriment on
those representations and suffered injury as a result);
*Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990 (Bankr.
M.D.N.C. 1994) (holding that the debtor's obligation to
home purchasers for repair of construction defects would
be excepted from discharge on the grounds that the
purchase was induced by the builder's false pretenses,
the builder intentionally misled the purchasers into
believing he was a qualified general contractor building
a quality home when in fact he was an unlicensed,
unqualified builder who had recently failed the general
contractors licensing exam, and the purchasers
detrimentally relied on the misrepresentations),
abrogated on other grounds, *Cohen v. de la Cruz*, 523 U.S.
213, 118 S.Ct. 1212, 140 L. Ed. 2d 341 (1998); *Baiata*, 12
B.R. 813 (finding a debt non-dischargeable where the
plaintiff would not have hired the debtor to perform
contracting and construction work had the debtor not
falsely represented that he was licensed by the county to
perform such work).

[Emphasis added.] *See also In re Martinez*, 2008 WL 954164 (C.D.

Cal. Feb. 26, 2008); *Sinha v. Clark (In re Clark)*, 330 B.R. 702

(Bankr. C.D. Ill. 2005) (applying section 523(a)(2)(A) to except

from discharge amounts paid by homeowners to correct construction

defects caused by contractor who had misrepresented his licensing

status, but granting discharge to other portions of state court

judgment against debtor-contractor).  As *In re Creta* recognized,

however, the misrepresentation must have been the proximate cause of the loss suffered.  271 B.R. at 221.

B

Before turning to the District of Columbia licensing regulations, it is useful to examine in general the requirement of proximate causation as an element of a § 523(a)(2)(A) claim. I addressed the issue of proximate causation at length in *Rucker v. Brown (In re Brown)*, 2008 WL 435267 (Bankr. D.D.C. Feb. 13, 2008).  What I said there I will repeat here with only slight modification.

 If the damages giving rise to the judgment proximately arose from some other cause than the misrepresentation, the debt can not be deemed to be one for property obtained by fraud.  As this court explained in *Davis v. Melcher (In re Melcher)*, 319 B.R. 761, 773-74 (Bankr. D.D.C. 2004):

> Only debts proximately arising from the obtaining of property by fraud are nondischargeable under § 523(a)(2)(A).  *United States v. Spicer*, 57 F.3d 1152, 1157 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1043, 116 S.Ct. 701, 133 L. Ed. 2d 658 (1996).  It is not enough to show that false representations were made; [the plaintiff] must also show that her damage flowed directly from the misrepresentations.  *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27 (1st Cir. 2001) ....

As the court of appeals observed in *Spicer*, 57 F.3d at 1157:

> Proximate causation--loss or damage to the creditor "as a proximate result of" the debtor's misrepresentation--is an element that must be proved in order to establish nondischargeability under § 523(a)(2)(A). [Citations omitted.]  And in general, the causation element in fraud cases demands more than mere "but-for" causation. *See*

11

> *Greenberg v. de Tessieres*, 902 F.2d 1002, 1004 (D.C. Cir.
> 1990) ("but-for" causation is not sufficient to establish
> common law fraud); *In re Hibbs*, 568 F.2d 347 (3d Cir.
> 1977) ("but-for" causation is not sufficient to establish
> claim under False Claims Act); Restatement (Second) of
> Torts § 548A (1977) (to establish fraud, fraudulent act
> must be a "substantial cause" of victim's loss).

*See also Archer v. Warner*, 538 U.S. 314, 325-26, 123 S. Ct. 1462,

155 L. Ed. 2d 454 (2003) (Thomas, J., joined by Stevens, J.,

dissenting) (for § 523(a)(2)(A) to apply, the creditor's loss

must be proximately traceable to the fraudulent act, and

superseding independent causes can sever any causal nexus even if

there was some remote connection between the injury and the

loss). As *Spicer* and subsequent decisions, including *Field v.*

*Mans*, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995), make

clear, it is appropriate to look to the Restatement (Second) of

Torts (1976) (cited hereinafter as "Restatement") in determining

what proximate cause entails. Proximate cause requires both

causation in fact (but-for causation) and legal causation. *See,*

*e.g., Shaw v. Santos (In re Santos)*, 304 B.R. 639, 669-70 (Bankr.

D.N.J. 2004):

> "If the misrepresentation has in fact induced the
> recipient to enter into the transaction, there is
> causation in fact of the loss suffered in the
> transaction.... [T]he plaintiff must have relied upon the
> misrepresentation in incurring the loss." RESTATEMENT §
> 546 cmt. a and b.
>
> Causation in fact can be established through evidence
> demonstrating that the debtor's false statements induced
> the creditor to enter into an agreement with the debtor
> for his services and that the misrepresentation was a
> substantial factor in influencing the creditor's

decision. [*Gem Ravioli, Inc. v. Creta (In re Creta)*, 271
B.R. 214, 219 (1st Cir. BAP 2002) ].

> By contrast to factual causation, "**[m]isrepresentation is
> a legal cause only of those pecuniary losses that are
> within the foreseeable risk of harm that it creates**....
> **This means that the matter misrepresented must be
> considered in the light of its tendency to cause those
> losses and the likelihood that they will follow.**"
> RESTATEMENT § 548A cmt. a and b.  Legal causation can be
> established through evidence showing that the creditor's
> loss could reasonably have been expected to result from
> its reliance on the debtor's misrepresentation. *Gem
> Ravioli*, 271 B.R. at 221.

As stated in *District of Columbia v. Harris*, 770 A.2d 82, 92

(D.C. 2001):

> Proximate cause is "that cause, which in natural and
> continued sequence, unbroken by any efficient intervening
> cause, produces the injury and without which the result
> would not have occurred." *Lacy v. District of Columbia*,
> 424 A.2d 317, 320 (D.C.1980) (internal quotation
> omitted). The "defendant need not have foreseen the
> precise injury, nor should [he] have had notice of the
> particular method in which a harm would occur, if the
> possibility of harm was clear to the ordinary prudent
> eye." *Spar v. Obwoya*, 369 A.2d 173, 177 (D.C.1977) (
> citing *Kendall v. Gore*, 98 U.S.App. D.C. 378, 387, 236
> F.2d 673, 682 (1956)).

As this court further explained in *Stello v. Aikin (In re Aikin)*,

No. 07-10017, 2007 WL 3305364, at *4 (Bankr. D.D.C. Nov. 5,

2007):

> for purposes of evaluating whether a link of proximate
> causation has been adequately alleged between any fraud
> and the benefits allegedly obtained by the defendant, ...
> the plaintiffs' allegation that the contract itself would
> not have been entered into but for the defendant's
> alleged fraud (once fraud is adequately pled) might
> satisfy the causation requirement of a claim asserted
> under § 523(a)(2)(A) as to **damages proximately caused by
> the fraud of procuring the contract**. *See In re Creta*, 271

13

> B.R. 214, 220 (1st Cir. BAP 2002) (debtor obtained a
> contract by false representations that were of importance
> to the plaintiff's entering into the contract and of
> essence to the performance of the contract, and his debt
> for damages arising from procuring that contract were
> nondischargeable); *Lee-Benner v. Gergely (In re Gergely)*,
> 110 F.3d 1448, 1453 (9th Cir. 1997); *Kendrick v.
> Pleasants (In re Pleasants)*, 231 B.R. 893 (Bankr. E.D.
> Va. 1999) (debtor misrepresented that he was an
> architect); *Kadlecek v. Ferguson (In re Ferguson)*, 222
> B.R. 576, 585-86 (Bankr. N.D. Ill. 1998).

[Emphasis added; footnote omitted.]

In the footnote to that text, the court added:

> However, if any damages suffered by the plaintiffs were
> not a reasonably foreseeable consequence of the false
> representations, the debt owed by the debtor could not be
> said to be a debt for property obtained by fraud.
> *Compare Parker v. Grant (In re Grant)*, 237 B.R. 97, 119
> (Bankr. E.D. Va. 1999) (false representation that debtor
> was married, relied upon by landlord in entering into
> lease with debtor, could not reasonably have been
> expected to result in the debt for nonpayment of rent)
> *with McCain v. Fuselier (In re Fuselier)*, 211 B.R. 540
> (Bankr. W.D. La. 1997) (false representations that the
> debtor-contractor was a licensed contractor, and that
> payments made by the homeowners to him would be used for
> the costs of construction); *McDaniel v. Border (In re
> McDaniel)*, 181 B.R. 883 (Bankr. S.D. Tex. 1994); *Peterson
> v. Bozzano (In re Bozzano)*, 173 B.R. 990 (Bankr. M.D.N.C.
> 1994); *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813, 820
> (Bankr. E.D.N.Y. 1981).

*Stello v. Aikin*, No. 07–10017, 2007 WL 3305364, at *4, n. 4.[1]

To the foregoing observations, it is useful to note that in *Spicer*, the debtor argued that no proximate causation existed because the borrowers' defaults arose from "a variety of factors, such as job loss or other personal financial reversals, all beyond Spicer's control."  57 F.3d at 1157.  In rejecting that argument, the court of appeals observed:

> Spicer's misrepresentations were material to HUD's determination that the mortgage applicants met the financial requirements to qualify for FHA-insured mortgages and had a sufficient personal financial stake in the properties to have the proper incentive to avoid default.  The misrepresentations were thus more than a "but-for" cause; they proximately caused HUD's losses when the buyers to whom HUD improvidently granted FHA-insured mortgages on the basis of Spicer's misrepresentations of their financial qualifications defaulted.   The defaults were thus a foreseeable consequence of Spicer's conduct.

*Id.* at 1159.  Although other factors also caused the defaults, the court of appeals reasoned that:

> as long as Spicer's misrepresentations were a material and proximate cause, they need not have been the sole factor causing HUD's losses.  *See In re Sobel*, 37 B.R.

---

[1]  In *Davis v. Melcher*, 319 B.R. at 775, the court recognized, in dicta, that a false representation that a debtor is licensed is not enough to establish proximate causation if "negligent performance was not a foreseeable consequence of his false representation that he was licensed."  The court noted that "[i]n those cases [in which fraud was found to exist], the debtor obtained a contract by false representations that were of importance to the plaintiff's entering into the contract, and his debt for damages arising from procuring that contract rightfully are nondischargeable. *See In re Creta*, 271 B.R. 214, 220 (1st Cir. BAP 2002); *see also Lee-Benner v. Gergely (In re Gergely)*, 110 F.3d 1448, 1453 (9th Cir. 1997)."

780, 786 (Bankr. S.D.N.Y. 1984). *See also In re Gerlach*, 897 F.2d at 1052 ("a debt is 'obtained by' fraud if the fraud is a substantial factor in the creditor's decision").

*Id.* The court of appeals distinguished *In re Hibbs*, in which the false certifications made to HUD concerned the property's heat, plumbing, and electrical systems. In *Hibbs*, the mortgagors monetary defaults and an unforeseen decrease in property values arising from a lead paint injunction could not be said to have proximately flowed from the misrepresentations regarding the heat, plumbing, and electrical systems. *See In re Hibbs*, 568 F.2d at 351.

As stated in Restatement 2d Torts § 548A (Legal Causation of Pecuniary Loss), "[a] fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance." As explained in Comment a. to that provision, "[i]n general, the misrepresentation is a legal cause only of those pecuniary losses that are within the foreseeable risk of harm that it creates."

The critical question is thus whether Wyatt's claims represent losses that could reasonably have been expected to result from the allegedly false representation that Carpenter was licensed.

16

VII

I approach the proximate causation question by addressing
whether the applicable regulations were designed to assure that
Carpenter was competent to perform the work at issue (or had some
other qualification that would have minimized the likelihood of
her suffering losses through shoddy workmanship), and whether
they were designed in some way to provide protection to Wyatt in
the event that she suffered a loss.

A

The decisions imposing the disgorgement requirement for
violations of § 800.1 make clear that the provision and other
related regulations were designed to protect homeowners.   The
legislative history to the statute authorizing the adoption of
regulations regarding home improvement contractors notes the
victimization of home owners that motivated the statute:

> Recently, articles in the Washington Post and the Evening
> and Sunday Star newspapers have brought to the attention
> of the committee and a growing pattern of complaints from
> **homeowners in the District of Columbia who have been**
> **victimized by unscrupulous home improvement**
> **contractors....**
>       The complaints most frequently received stem from
> the following practices: contractors receiving full
> payment prior to completion of the job; misrepresentation
> of the starting and completion dates and of costs; sloppy
> inferior work; incomplete work; substituted materials;
> and various other breaches of contract; and, improper
> permits or no permits at all.
>       **Only fly-by-night operators can profit by such**
> **practices.**  The established ethical home improvement
> contractor cannot since his greater financial
> responsibility furnishes an assurance that a homeowner
> can obtain redress for violation of a home improvement

17

> contract.   Requiring home improvement contractors to
> furnish a bond for the protection of the public will
> insure that such contractors will be financially
> responsible.
>     Under existing law . . ., the Commissioners have
> authority to license persons engaged in the home
> improvement business but do not have the authority to
> require bonds and insurance coverage of such
> persons.  . . .
>     Section 1 of the bill authorizes the bonding of any
> person licensed by the Commissioners to engage in the
> home improvement business. . . .
>     Section 2 of the bill authorizes the Commissioners
> to establish classes and subclasses of person so licensed
> and to specify the amounts and conditions of bonds or
> other security necessary to protect the public from loss
> by reason of the failure of the licensed person to
> observe District Of Columbia Law.  The Commissioners may
> also require such persons to keep public liability and
> property damage insurance . . . .

S. Rep. No. 86-1829, 86th Cong., 2d Sess. 2 (1960) (emphasis

added).  It is thus clear that the regulations next discussed

were not merely revenue raising measures.  At the same time,

however, Wyatt has not shown that the regulations finally adopted

were designed to protect her from suffering the losses that she

suffered or to provide a source of recovery for those losses.

                              B

     Carpenter characterizes the D.C. regulations as merely

revenue raising measures.  If they were such, then Wyatt would

not be able to say that her damages were proximately caused by

her reliance on Carpenter's misrepresentation that he was

licensed.  Although the regulations are more than just a revenue

raising measure, and are intended to protect consumers from

victimization, they are nevertheless not designed to assure that

                              18

licensed contractors are competent to perform work: no showing is required that a contractor is competent in the field of home improvement work in order to obtain a license.  In contrast, 17 D.C. Mun. Reg. §§ 305 and 306 impose a requirement of an examination regarding installation of air conditioning equipment in order to be licensed to perform such installation work.[2] Because the regulations at issue are not designed to assure that Carpenter was competent to perform the required work, Wyatt's reliance on Carpenter's being licensed cannot be said to be the proximate cause of her loss based on any assumption by her that Carpenter's representation that he was licensed meant that he was competent to do the work.

There being no competence requirement to qualify for a home improvement license, the only possible license requirement imposing a qualification designed to guard against homeowners suffering losses is contained in 16 D.C. Mun. Reg. § 801.2, which provides:

> Each person applying for a license shall submit to the Director under oath, such information as the Director may require to assist in determining **whether the applicant is trustworthy and intends to act as a bona fide home improvement contractor or salesperson.**

---

[2]  Similarly, the statute at stake in *Rubin v. Douglas*, 59 A.2d 690 (D.C. 1948), regarding certain health practitioners was designed to "fill 'the very great need for legislation to protect the people of the District from being preyed upon by ignorant, incompetent, untrained, conscienceless persons pretending to cure human ailments.'"  59 A.2d at 691 n.2 (quoting Senate Report).

[Emphasis added.] Although the parties have not addressed this requirement, it appears designed to guard against the fly-by-night type of predator (discussed in the legislative history to the statute authorizing adoption of the regulations) who really is not interested in completing a home improvement contract.[3]  In any event, Wyatt's losses appear to stem from Carpenter's incompetence, not from any lack of trustworthiness or lack of intent to act as a bona fide home improvement contractor.

C

Wyatt, however, would be entitled to a determination of nondischargeability if she can show that she relied on Carpenter's representation that he was licensed because she had reason to believe that she would be better off, with respect to the harm she suffered, if Carpenter had been licensed.  Carpenter has not attempted to address the requirements for obtaining a license, and whether they would not be of a character that would permit Wyatt to assume that if Carpenter were licensed, she would be better off with respect to the losses she suffered.  Although Wyatt will bear the burden of proving that Carpenter's being

---

[3]  The District of Columbia government's website posts application requirements that appear to go to this requirement, and that may or may not have been in place when Carpenter began performing work for Wyatt.  Among the requirements are these: the applicant must submit a Police Criminal History Report and "the business requires a background investigation prior to issuance of a license."  No evidence has been submitted at this juncture to show that the background investigation entails anything other than examining whether the applicant is trustworthy.

licensed would have left her better off with respect to the

damages she suffered, it was Carpenter's burden in moving to

dismiss to show that Wyatt cannot come up with any such proof.

In any event, the parties have not briefed the issue, and it is

appropriate therefore to decide this part of the

nondischargeability claim only after the issues in this regard

are fully addressed by the parties.

Nevertheless, I address below two requirements under the

applicable regulations that Wyatt might attempt to invoke.

First, under 16 D.C. Mun. Reg. § 802.1:

> Each applicant for a contractor's license shall file in
> the Office of the Director a bond issued in support of
> the license for which application is made, extending to
> third-party recovery, in the penal sum of twenty-five
> thousand dollars ($25,000) running to the District of
> Columbia . . . .

However, under 16 D.C. Mun. Reg. § 802.3:

> The condition of the bond under § 802.2 shall not be
> construed or understood to require any surety to be
> responsible for the completion of a home improvement
> contract entered into by the principle on the bond, nor
> shall the surety be liable under the bond for any claim
> other than a claim for **financial loss** suffered by a
> homeowner in connection with the transaction between the
> owner and principal and **arising out of a violation of
> statute or regulation for which the principal was subject
> to criminal prosecution by the United States or the
> District of Columbia.**

If Carpenter had been licensed, his bond could not have been

called upon for a claim unless it arose out of a violaton of a

statute or regulation for which he could be criminally

prosecuted.  Accordingly, such a bond could not be called upon

21

based on shoddy work without anything more. If Wyatt would not
have been able to call upon the bond, it follows that Wyatt
cannot assert that she proximately suffered loss because she
would have been able to look to a bond if Carpenter had been
licensed. Illustratively, in *Gilliam v. Travelers Indem. Co.*,
281 A.2d 429 (D.C. 1971), the court of appeals held that a bond
could be called upon when the contractor collected prepayment on
a contract and its president absconded without the contractor
completing the work. The contractor's conduct subjected it to
criminal prosecution, and thus the bond could be called upon.
The parties have not briefed the issue of whether Carpenter
engaged in conduct that caused Wyatt's losses and that would have
subjected him to criminal prosecution if he *were* licensed and had
a bond.[4]

Second, 16 D.C. Mun. Reg. § 803 imposes an insurance
requirement on licensed home improvement contractors. The
licensee may be self-insured under certain criteria, and,
alternatively, the licensee is required, upon applying for a
license, to:

---

[4] Because he was *not* licensed, Carpenter would be subject
to criminal prosecution for having violated 16 D.C. Mun. Reg. §
800.1 by accepting payment as an unlicensed contractor prior to
completing the work. 16 D.C. Mun. Reg. § 800.6. But if he *was*
licensed, his acceptance of payment before completing the work
would not be a violation of § 800.1, and thus, any bond he would
have been required to have if licensed could not be called upon
based on a violation of § 800.1.

22

> furnish evidence satisfactory to the Director that the
> operations proposed to be conducted by the applicant
> under the authority of the license for which application
> is made will be covered by **public liability and property
> damage insurance** for the full period of the license.

16 D.C. Mun. Reg. § 803.1. [Emphasis added.]  In turn:

> the insurance . . . shall provide a minimum limit of
> **liability** of fifty thousand dollars ($50,000) **for bodily
> injury or death of any one (1) person in any single
> accident**, one hundred thousand dollars ($100,000) in the
> aggregate for more than one (1) person in any single
> accident, and ten thousand dollars ($10,000) **property
> damage in any single accident**.

16 D.C. Mun. Reg. § 803.2.  [Emphasis added.]  These provisions

do not appear to be insurance coverage for mere shoddy

performance of work.  The insurance that a licensed home

improvement contractor would have been required to have in place

does not appear to furnish any basis for Wyatt to contend that

her loss was proximately caused by her reliance on Carpenter

being licensed and having insurance in place.

Wyatt could take Carpenter's representation that he was

licensed as a representation that he was insured and bonded, and,

she might argue, could take that as a representation that he was

financially responsible, and that such misrepresentation caused

her damage because Carpenter proved to be insolvent.  The

difficulty with such an argument is that having insurance and a

bond in place does not demonstrate an ability to pay for any

losses suffered if the bond and insurance are not designed to

cover such losses.  Moreover, a misrepresentation as to financial

23

condition must be in writing in order to form a basis for
nondischargeability. 11 U.S.C. § 523(a)(2)(B). Wyatt has not
pled a written representation as to financial condition, and has
not invoked § 523(a)(2)(B).

VIII

If the claim for shoddy work were held to be
nondischargeable, that would open up a separate question: does
that make the disgorgement award and the partial tripling of that
award nondischargeable? It does not make the disgorgement award
nondischargeable, as no showing of fraud is required for a
disgorgement order, and the disgorgement remedy is not for a loss
proximately caused by Carpenter's misrepresentation. All that
Wyatt would be entitled to recover would be the losses caused by
shoddy workmanship. As to the trebling of damages and the award
of attorney's fees, that was applied to the disgorgement award
based on Carpenter accepting payment as an unlicensed contractor
prior to completing the work, and the incidental award of treble
damages and attorney's fees with respect to the disgorgement
award is not nondischargeable. As to the losses caused by poor
workmanship, however, Wyatt may be able to point to a provision
in the D.C. consumer protection statute that permits trebling of
the award for such losses. The parties have not addressed that
issue. Nor have they addressed whether Wyatt is limited to
pursuit of the claim for disgorgement and the award of treble

damages and attorney's fees, and cannot now show a claim for

losses and an alternative ground for trebling damages and

awarding attorney's fees.  The disgorgement award apparently was

more than adequate to cover Wyatt's losses, and she might argue

that she is entitled to treat the judgment as covering her claim

for losses.  *See Spicer*, 57 F.3d at 1155-57 (failure to have

obtained judgment for fraud did not preclude creditor from

demonstrating that the debt was procured by fraud).

IX

In accordance with the foregoing, it is

ORDERED that partial judgment is granted decreeing that any

debt based on disgorgement of fees for having accepted payment

prior to completing work is dischargeable.  It is further

ORDERED that judgment is not granted with respect to whether

the losses Wyatt suffered, and any amounts recoverable based on

her having suffered such losses, are nondischargeable.

[Signed and dated above.]

Copies to:

All counsel of record.